## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRANDI SIBLEY** | * | **CIVIL ACTION NO. 2:22-CV-04757** |
| | * | |
| **v.** | * | **JUDGE: ELDON E. FALLON** |
| | * | |
| **TOURO LCMC HEALTH** | * | **MAGISTRATE:  KAREN WELLS ROBY** |
| **GREG FEIRN** | * | |
| **DR. JOHN HEATON CMO** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

All of the claims brought by Plaintiff, Brandi Sibley ("Sibley"), against Dr. John Heaton ("Dr. Heaton" or "Defendant"), the only Defendant properly served with Sibley's Complaint,[1] should be dismissed as a matter of law under Fed. R. Civ. P. 12(b)(6). Although this Motion to Dismiss is filed solely on behalf of Dr. Heaton, all of Sibley's claims are asserted vaguely against all of the Defendants, and therefore, Dr. Heaton moves for dismissal of all of Sibley's claims out of an abundance of caution since the inartful drafting of Sibley's Complaint may cause all of the claims to be asserted against Dr. Heaton.

In sum, Sibley's Complaint should be dismissed with prejudice for the following reasons:

1. Sibley's claim seeking relief under 42 U.S.C.  § 1981 fails as a matter of law because § 1981 is limited to race discrimination and Sibley fails to make a single allegation regarding race. *McCoy v. Homestead Studio Suites Hotels,* 177 F. App'x 442, 445 (5th Cir. 2006);

---

[1] Louisiana Children's Medical Center, d/b/a LCMC Health (possibly improperly named as "Touro LCMC Health") has filed contemporaneously with this motion its Motion to Dismiss under Rule 12(b)(5) asserting that it was not properly served under Rule 4. Defendant Greg Feirn has not been served as of the date of filing this Motion to Dismiss.

Exhibit A

2. Sibley's claim of religious discrimination under Title VII (42 U.S.C. § 2000e *et seq.*) lacks any allegations to support relief; in fact, Sibley admits in her Complaint that she was afforded a religious accommodation once she finally complied with the requirements of LCMC Policy and the law regarding religious accommodations, but only after three prior attempts that lacked any religious content. *Slocum v. Devezin*, 948 F. Supp. 2d 661, 670 (E.D. La. 2013);

3. Sibley's Title VII retaliation claim fails because her own Complaint admits that her temporary suspension was not caused by her request for a religious exemption, but because she ***failed to request*** a religious exemption in accordance with the law and applicable policy—Ms. Sibley's employment was immediately reinstated as soon as she complied with that law and that policy. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 325 (5th Cir. 2017), *as revised* (Dec. 7, 2017);

4. Louisiana's Worker's Compensation law bars negligent infliction of emotional distress claims against an employer or individual supervisor acting on the employer's behalf. *Barton v. Checkers Drive-In Restaurants, Inc.*, No. CIV.A. 11-186, 2011 WL 1193061, at *4 (E.D. La. Mar. 28, 2011);

5. Sibley's claim under Louisiana Civil Code Article 2320 fails because Article 2320 does not provide a separate, independent cause of action and merely sets forth vicarious liability principles for tortious conduct; yet Sibley appears to improperly apply the article to Title VII relief. *Meek v. Roddy*, No. CV 20-2880, 2021 WL 4552554, at *2 (E.D. La. Oct. 5, 2021);

6. Sibley's "common law conspiracy" claim requires a separate underlying and actionable tortious act, absent from her Complaint. *Shargian v. Shargian,* 591 F. Supp. 3d 100, 111 (E.D. La. 2022);

7. Sibley's negligent infliction of emotional distress, Article 2320, and "common law conspiracy" claims all sound in tort and are therefore subject to the one-year prescription period. Therefore, all of these claims should be dismissed with prejudice as time-barred. Louisiana Civil Code Article 3492.

8. Sibley's allegations of constitutional violations do not apply to Dr. Heaton, or any other Defendant, because they are private entities, and so the constitutional assertions made are inapplicable. *Manhattan Cmty. Access Corp. v. Halleck*, 204 L. Ed. 2d 405, 139 S. Ct. 1921, 1932 (2019); and

9. La. Rev. Stat. § 46:231.4 only applies to recipients of certain welfare and public assistance programs, not to employees or employers.

2

Simply put, Sibley's allegations are insufficient to state a claim against Dr. Heaton or any other Defendant as a matter of law and should be dismissed with prejudice.

## I.     Sibley's Own Complaint Makes Clear that She was Treated in Compliance with the Law

Although the Complaint spans over 90 paragraphs, Sibley's Complaint can be succinctly summarized as follows. Sibley, a nurse for Children's Hospital, bases her complaints on Defendants' response to the COVID-19 pandemic, including Defendants' compliance with Center for Disease Control and Prevention's ("CDC") recommendations and guidance and the Centers for Medicare and Medicaid Services' ("CMS") mandate which *required* COVID-19 vaccines *at hospitals*. R. Doc. 1, ¶ 5. In pursuit of its goals to provide the best patient care possible, while providing a safe work environment for its employees, and following guidance and mandates from federal agencies and experts, LCMC Health implemented a policy requiring that the employees of its hospitals, including Children's Hospital, must be vaccinated against COVID-19. R. Doc. 1, ¶ 6. The policy still allowed employees to seek accommodations where the policy conflicted with an employee's sincerely held religious beliefs, including potential exemption from the COVID-19 vaccination requirement. R. Doc. 1-1, p. 6, Exhibit D.2 of Sibley's Complaint, Policy # HR-427; Defendant's Exhibit E, entire Policy # HR-427.[2] As part of this policy, if an employee both failed to receive a COVID-19 vaccination and failed to comply timely with the accommodation requirements of the policy, the employee could be suspended without pay for up to 14 days in

---

[2] In addition to the allegations in the Complaint, the Court can consider attachments to the Complaint and matters of public record. *Meek v. Roddy*, No. CV 20-2880, 2021 WL 4552554, at *3 (E.D. La. Oct. 5, 2021); *Morgan v. Swanson*, 659 F.3d 359, 366 (5th Cir. 2011). Additionally, Defendants attach the entirety of Policy # HR-427, as portions of the policy, made integral to Sibley's Complaint, are excluded from the Complaint's Exhibit. This Court and the Fifth Circuit allow the attachment of documents to a Motion to Dismiss when those documents are specifically mentioned in the Complaint and are integral to the Complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *Borders v. Chase Home Fin. L.L.C.*, No. CIV.A. 09-3020, 2009 WL 1870916, at *1 (E.D. La. June 29, 2009).

3

order to protect the public while attempting to secure compliance. R. Doc. 1, ¶ 24; R. Doc. 1-1, p.

6, Exhibit D.2 of Sibley's Complaint.

### A. Sibley's Complaint Admits That Her Initial Affidavits[3] Lacked Religious Information

Sibley's Complaint makes clear that each of her first three affidavits lack any religious

content sufficient to comply with a religious exemption.

#### 1. Her First Affidavit is Limited to Legal Maxims And Lacks Any Religious Reason for Refusing the Vaccine

On or about September 29, 2021, Sibley presented her first affidavit in an attempt to receive

a religious exemption. R. Doc. 1, ¶ 7. That affidavit provides no reference to any religious content

whatsoever. Defendant's Exhibit A, September 29, 2021 Submission by Sibley.[4] This document

lacked any statements regarding Sibley's religious beliefs, or more importantly, how those

religious beliefs prevented her for obtaining the COVID-19 vaccine. *Id.* Instead, this document

made reference to legal maxims, her right to accept or deny contracts, and her right to be left alone.

*Id.*

Following that September 29th submission, Sibley received a request for additional

information from the Religious Exemption Review Committee, a committee made up of non-

---

[3] Affidavits are certainly not required by the policy. Defendants are unaware of Sibley's rationale for proving information in affidavit form.

[4] Sibley mentions that she submitted four affidavits repeatedly, but only one is attached to her Complaint. Since the prior affidavits are integral to Sibley's claims and demonstrate, on their face, that they do not specify a basis for a religious exemption from her private employer's COVID vaccine policy, they are attached to this Motion to Dismiss. *Collins*, 224 F.3d at 499; *Chase Home Fin. L.L.C.*, 2009 WL 1870916, at *1. Counsel apologizes for the quality of the attachments; however, these were the submissions provided to Defendants at this time and were also the copies submitted to the EEOC as part of the Position Statement, which Sibley incorporated into her Complaint by reference and attachment.

4692801.v1

denominational Chaplains, Pastors, and Human Resources Leaders tasked with reviewing these exemptions. R. Doc. 1, ¶ 10; R. Doc. 1-1, p. 7, Complaint's Exhibit E. It was this Committee which reviewed and considered each of Sibley's submissions, ultimately granting her request. R. Doc. 1, ¶ 31. In this request, the Committee specifically explained that the September 29th submission "did not share information about [her] religious beliefs and why this would influence [her] decision to receive the COVID 19 vaccine." R. Doc. 1-1, p. 7, Complaint's Exhibit E.[5]

### 2. Sibley's Second Affidavit Doubled-Down on Legal Maxims and Rights to Property, Rather Than Any Religious Reason to Refuse the Vaccine

In response, Sibley provided a second affidavit. R. Doc. 1-1, p. 15; Defendant's Exhibit B, Sibley's October 13, 2021 Affidavit. This second affidavit again lacked any reference to Sibley's religious beliefs or how her religious beliefs prevented Sibley from receiving the COVID-19 vaccine. Defendant's Exhibit B, Sibley's October 13, 2021 Affidavit. Rather, this affidavit again asserts unclear "legal maxims" regarding "free disposal of their own property," "leaving the field of battle" and cites to the Nuremberg Code. *Id.* Again, Sibley failed to take this opportunity to comply with the religious accommodation requirements.

On October 25, 2021, Sibley received a letter denying her religious accommodation request because she twice failed to articulate her religious beliefs or, more importantly, how those religious beliefs conflicted with the policy requiring employees to receive the COVID-19 vaccine. R. Doc. 1, ¶ 17; R. Doc. 1-1, p. 8, Complaint's Exhibit F.

---

[5] According to EEOC guidance, "The employer may ask for an explanation of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement." See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEOC Laws", https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L

### 3. Sibley's Third Affidavit Again Lacks Any Reference to Religious Beliefs of Any Kind, Instead Focusing on Sibley's Legal Rights

Then, on or about November 5, 2021, Sibley provided a third affidavit. Defendant's Exhibit C, Sibley's November 4, 2021 Affidavit. As is evident from this affidavit, Sibley made absolutely no reference to her religious beliefs whatsoever, and instead made further legal assertions with no basis in law or fact. *Id.*

On November 15, 2021, following Sibley's third failure to provide sufficient information regarding a sincerely held religious belief or how that belief prevented her from obtaining the COVID-19 vaccine, strongly recommended by science and medical professionals, the CDC, a myriad of professional healthcare organizations, and required by the federal CMS and LCMC Health's COVID-19 vaccine policy, Sibley was suspended pursuant to that COVID-19 vaccine policy. R. Doc. 1-1, p. 3; Defendant's Exhibit E, Policy # HR-427.

### 4. Fourth Time is the Charm—For the First Time, Sibley's Fourth Affidavit Provides at Least Marginally Relevant Religious Contentions Preventing Her From Receiving the Vaccine

Finally, on or about November 17, 2021, Sibley submitted a fourth affidavit. R. Doc. 1-1, p. 11 Complaint's Exhibit H; Defendant's Exhibit D, Sibley's November 17, 2021 Affidavit in its entirety.[6] For the first time, Sibley at least made a colorable effort to invoke some sort of actual religious basis for her claims. For example, she stated, "I retain the right to decline all attempts to access, influence and/or otherwise alter any and all of my God-given biological material and/or biological systems which are unique, flawless and original design and craftsmanship of my Creator." Defendant's Exhibit D. Such *new statements*, clarifying Sibley's religious reasons for

---

[6] Sibley only appended a single page of her November 17, 2021 submission to her Complaint; therefore, Defendants have attached the submission in its entirety hereto as Exhibit D.

objecting to receiving the COVID-19 vaccine, at least arguably satisfied the requirements for a religious accommodation.

Moreover, these *new statements* make clear that Sibley herself conceded that she needed to provide additional information to Defendants—otherwise, she would not have provided the additional information in her fourth affidavit. These statements, made after three failed attempts, demonstrate that Sibley had to provide additional information to make any rational connection between her religious beliefs and her contention that she should be exempt from the vaccine.

Because Sibley finally complied with the religious exemption parameters, she was granted a religious exemption from the COVID-19 vaccine mandate and was reinstated on November 23, 2021. R. Doc. 1, ¶ 31.

### B.  Sibley Admits That Defendants Acted in Compliance with CMS, CDC, and EEOC Regulations and Guidance

Sibley's Complaint makes clear that her true concern was not the decisions of Defendants, but the decisions of the federal government and the consensus of medical professionals across the country and globe. Sibley admits throughout her Complaint that Defendants acted in compliance with the requirements and guidance of multiple federal government agencies and medical associations. She admits that Defendants acted in compliance with the CMS mandate and CDC recommendation that COVID-19 vaccines should be required in hospitals. R. Doc. 1, ¶ 5. Importantly, Sibley also *admits* that Defendants actions *were in compliance with* Equal Employment Opportunity Commission ("EEOC") guidelines, stating that Defendants applied "the recommendations from the EEOC and other agencies," and that this compliance with EEOC's own guidelines is what caused the deprivation of her "individual liberties." R. Doc. 1, ¶¶ 52, 54. Sibley also concedes that Dr. Heaton and Greg Feirn "rel[ied] on advice from medical associations and

7

federal agencies such as the CMS and CDC" in making their decisions regarding the COVID-19 mandate. Such admissions make clear the farce of this lawsuit.

Nevertheless, Sibley asserts that she is entitled to $300,000 and attorney's fees (despite her *pro se* status) and costs because she was suspended without pay for 9 days until she provided a valid religious exemption affidavit. Her Complaint's own allegations clearly show that she was afforded all of her rights due under the law and that Defendants afforded her a religious exemption immediately and once she presented a valid request for same, all in accordance with EEOC guidance and the guidance/regulations of CMS and CDC.

### C. Sibley's Claims Lack Any Support

Sibley's Complaint contains the following listed causes of action: (1) Discrimination, failure to reasonably accommodate, and retaliation against Sibley because of her religious beliefs under Title VII (42 U.S.C. § 2000 *et seq.*) (R. Doc. 1, ¶¶ 44-64); (2) Violation of 42 U.S.C. § 1981(a) and (b) (R. Doc. 1, ¶¶ 44-64); (3) Violation of Louisiana Civil Code Article 2320 (R. Doc. 1, ¶¶ 65-75); (4) Common Law Conspiracy (R. Doc. 1, ¶¶ 76-84); and (5) Negligent infliction of emotional distress (R. Doc. 1, ¶¶ 85-90). However, in addition to these claims, the four "counts" in Sibley's Complaint, Sibley also appears to assert alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, and La. Rev. Stat. § 46:231.4.

It is not clear against whom these claims are asserted, and so Dr. Heaton addresses each claim. As explained further below, the Complaint fails to state a cause of action for any of Sibley's claims, and should be dismissed with prejudice.

8

## II.     Sibley's Constitutional Claims Fail Because Defendants are Private Actors

Defendants, a private medical center[7] and its chief officers like Dr. Heaton, are private actors, and therefore, are not covered by the First Amendment, which explicitly states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *Belluso v. Turner Commc'ns Corp.*, 633 F.2d 393, 398 (5th Cir. 1980). ("The First Amendment is a restraint on Government, not on private persons.") Further, and contrary to Sibley's suggestion, the U.S. Supreme Court has made clear that the First Amendment does not extend to private entities simply because certain government agencies regulate their conduct:

> Numerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities . . . that is not the law.

*Manhattan Cmty. Access Corp. v. Halleck*, 204 L. Ed. 2d 405, 139 S. Ct. 1921, 1932 (2019) (holding that a private network with public access channels is not a state actor because of New York City regulations).

Therefore, to the extent that Sibley's Complaint asserts a cause of action against Defendants for violation of the First Amendment, that claim should be dismissed as a matter of law.[8]

---

[7] To the extent that Sibley's Complaint against "Touro LCMC Health" is indeed against Louisiana Children's Medical Center d/b/a LCMC Health, then it is a non-profit private entity according to the Louisiana Secretary of State website. *See,* https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=835630_BD0817DBA7. See *Ruston La. Hospital Co., LLC. v. Lincoln Health Foundation, Inc.*, No. 18-0881, 2018 WL 6332850 (W.D. La. 2018) (a court may take judicial notice of public records, including secretary of state records). Therefore, Dr. Heaton as the Chief Medical Officer, acted on behalf of a private entity during the time period alleged in the Complaint.

[8] Sibley also mentions the Fourth, Fifth, and Fourteenth Amendments in her Complaint (R. Doc. 1, p. 4); however, she fails to make any allegations sufficient to assert claims under any of these Amendments. To the extent that such claims are made, they should be dismissed with prejudice as well, as these amendments likewise only apply to prevent government action, not that of private entities. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656,

9

III.    **Sibley's claim under § 1981 Fails as a Matter of Law Because it Only Applies to Race Discrimination**

Sibley asserts a violation of 42 U.S.C. § 1981, which is limited solely to race discrimination claims. *See McCoy v. Homestead Studio Suites Hotels,* 177 F. App'x 442, 445 (5th Cir. 2006) ("To prove a § 1981 claim, a plaintiff must show that (1) he is a member of a racial minority, (2) the defendant had an intent to discriminate on the basis of race, and (3) the discrimination concerns one of the activities listed in the statute."); *see also Aziz v. MMR Grp., Inc.,* 530 F. Supp. 3d 644, 654 (M.D. La. 2019) ("MMR argues that Plaintiff fails to state claims for religious discrimination under § 1981 because § 1981 does not protect against religious discrimination . . . To the extent Plaintiff attempts to plead claims for religious discrimination under § 1981, the Court dismisses the claims with prejudice.")

Therefore, as a matter of law, Sibley's claims of religious discrimination under 42 U.S.C. § 1981 should be dismissed with prejudice.

IV.    **Sibley's Title VII Claims Lack Any Support Because She Admits That She Received a Religious Accommodation to the Vaccine Mandate**

    A. **Defendants Accommodated Sibley, as Demonstrated by Her Own Complaint**

Sibley alleges that Defendants violated her rights under Title VII (42 U.S.C. § 2000e *et seq.*) because Defendants failed to accommodate her religious accommodation request to the COVID-19 vaccine mandate and retaliated against her for asserting her religious beliefs. R. Doc. 1, ¶¶44-64.

---

80 L. Ed. 2d 85 (1984) (Fourth Amendment); *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 542, 107 S. Ct. 2971, 2984, 97 L. Ed. 2d 427 (1987) (Fifth Amendment); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 349, 95 S. Ct. 449, 453, 42 L. Ed. 2d 477 (1974) (Fourteenth Amendment). The Religious Freedom Restoration Act (42 U.S.C. § 2000bb *et seq.*) cited in the Complaint also only applies to government actions. *See Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 695, 134 S. Ct. 2751, 2761, 189 L. Ed. 2d 675 (2014).

4692801.v1

To establish a claim for religious discrimination, Sibley must establish the following elements: (1) that she had a *bona fide* religious belief that conflicted with an employment requirement; (2) that she informed the employer of her belief; and (3) that she was subject to an adverse employment action for failing to comply with the conflicting employment requirement. *Slocum v. Devezin*, 948 F. Supp. 2d 661, 670 (E.D. La. 2013). Sibley's discrimination claim fails at the *prima facie* case.

It is undisputed that religious discrimination under Title VII does not protect against secular or political opinions, or the preferences of employees and that employers can request additional information in the event that a religious request lacks sufficient content beyond legal, secular, and political bases. 29 C.F.R. § 1605.1.[9]  The EEOC has made clear that Title VII does not protect social, political, or economic views or personal preferences. ("What you should Know," *Id.* at Section L.2"). As made evident by the affidavits attached to this Memorandum and Sibley's Complaint (R. Doc. 1-1, p.11), no sufficient religious basis for Sibley's request for an exemption was provided in accordance with the policy. (Defendant's Exhibit D)

Moreover, having a religious belief alone is not enough to trigger a need for accommodation, the employee must show that ***the belief conflicted with an employment requirement.*** *Devezin*, 948 F. Supp. 2d at 670; *see also George v. Home Depot, Inc.,* No. 00-2616, 2001 WL 1558315, at *4 (E.D. La. Dec. 6, 2001), *aff'd,* 51 F. App'x 482 (5th Cir. 2002) (applying Title VII analysis because plaintiff asserted "that her Catholic religion prohibited her from working on Sundays, w***hich conflicted with defendant's requirement*** that she work on Sundays.") (emphasis added). Following her submission of an affidavit that at least arguably, though

---

[9] See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEOC Laws", https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L, (hereafter, "What You Should Know").

dubiously, identified her religious belief and ***conflict*** with the COVID-19 vaccine mandate, Sibley was immediately reinstated to her position. R. Doc. 1, ¶ 31. She remains employed in the same capacity today.

In order to evaluate Sibley's request for an exemption from the COVID-19 vaccination requirement, Defendants simply requested additional information. This request was in compliance with the aforementioned EEOC Guidance and, as evidenced by Sibley's later clarifications in her fourth religious accommodation request, Defendants' request was necessary. *Compare* Defendant's Exhibits A, B, and C (initial affidavits) to Defendant's Exhibit D (fourth affidavit). Defendants needed to ask for more information because that was the only way that Sibley would have ultimately provided the necessary detail in her fourth affidavit.

The EEOC provides that employers "may ask for an explanation of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement" and further directs that if an employee's objection to the vaccination is not religious in nature, or is not sincerely held, Title VII does not require the employer to provide an exception to the vaccination requirement as a religious accommodation. ("What You Should Know," *Id.* at Section L.2).[10] Following the guidance, and common sense in general, Defendants asked for further detail as to the religious nature of Sibley's requested accommodation, and Sibley refused to provide further detail until the fourth affidavit.

Notably, the EEOC has also instructed, "An employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly

---

[10] *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L.

4692801.v1

denied an accommodation. *Id.,* citing "EEOC Guidance on Discrimination Because of Religion" Section 12-IV.A.2. However, as soon as Sibley complied with the request and provided religious information, she received the accommodation requested.

Defendants took no action against Sibley because of her religious beliefs, but simply because *she did not properly and adequately inform them* of her religious beliefs or the conflict with the vaccine requirement. Sibley's Complaint is devoid of a single allegation that Defendants took any adverse action against her because of her religious beliefs. In fact, her Complaint appears to assert more so that Policy HR-427 in itself constituted religious discrimination because of the coercive or "forced" nature of the requirement. R. Doc. 1, ¶ 47. However, Courts have consistently recognized that vaccination mandates are proper and not coercive. *Bridges v. Houston Methodist,* No. 21-1774, 2021 WL 2399994 (S.D. Tex. 2021) (holding that vaccine requirement was not coercive because the employee could "freely choose to accept or refuse a COVID-19 vaccine. If she refuses, she will simply need to work somewhere else."); *We the Patriots USA, Inc. v. Hochul,* No. 21-2179, 2021 WL 5121983, at *18, --F.4th – (2nd Cir. 2021) (rejecting similar arguments regarding vaccinations and stating that "[a]lthough individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice."). Therefore, to the extent that Sibley is alleging that the COVID-19 vaccine mandate is itself a violation of law, that claim should be dismissed with prejudice. Defendants properly accommodated Sibley by exempting her from the COVID-19 vaccine mandate as soon as they were informed of Sibley's religious beliefs, in compliance with Title VII.

### B. Sibley's Retaliation Claim Fails Because She Made No Complaints Related to Any Protected Activity Under Title VII

Although Sibley baldly asserts in her conclusory statements that Defendants retaliated against her for her religious beliefs, the facts set forth in her Complaint show that not only did

13

Defendants not retaliate against her, but she received an accommodation as soon as Defendants learned about her religious beliefs, and she has continued working with the accommodation for over a year.

To satisfy a retaliation claim under Title VII, Sibley must allege that: (1) she participated in activity protected under Title VII; (2) Defendants took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 325 (5th Cir. 2017), *as revised* (Dec. 7, 2017). Protected activity under Title VII includes opposing any practice made unlawful by Title VII or filing a charge or participating in an investigation under Title VII. *Id.* In a retaliation claim, a plaintiff must prove that she would not have suffered the adverse action "but-for" the employer's retaliatory motive. See *Univ. of Tex. Southwestern Med. Center v. Nassar,* 133 S. Ct. 2517 (2013).

Sibley's Complaint lacks any allegations that she lodged any complaints related to religious discrimination required for a retaliation claim. Moreover, it is clear, as alleged in the Complaint, that the decision to suspend Sibley was not because of her request for a religious accommodation, but because of her improper request and failure to provide additional information in accordance with the policy. As noted above, it took Sibley four attempts to provide any information regarding any of her religious beliefs or their conflict with the policy. Before that point, her religious accommodation requests contained references to legal sources and non-related statements that had no reference to anything related to religion, and were limited solely to secular grounds. Moreover, and as set forth above, since reinstatement, Sibley remains employed. Therefore, this claim should be dismissed with prejudice.

14

4692801.v1

### C.  Courts Afford Deference to Employer Business Decisions, and Should do so Particularly in a Healthcare Setting

It is well settled that the employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions nor ... to transform the courts into personnel managers." See *Eugene v. Rumsfeld*, 168 F.Supp.2d 655 (S.D.Tex. 2001); *EEOC v. La. Office of Community Servs.*, 47 F.3d 1438 (5th Cir. 1995)(citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988)). "Federal Courts 'do not sit as a super-personnel department that reexamines an entity's business decisions ...'." *Eugene*, 168 F.Supp.2d at 678, citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)(quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)). It has long been the law in the Fifth Circuit that Title VII does not protect against unfair or unwise business decisions, only against decisions motivated by unlawful animus. See *Eugene*, 168 F.Supp.2d at 678, citing *Nieto v. L&H Packing Co.*, 108 F.3d 621 (5th Cir. 1997).

Here, Defendants made the decision to require employees to be vaccinated against COVID-19, in the midst of the pandemic and upon guidance from a multitude of specialists, agencies and medical associations. Defendants provided a mechanism for seeking exceptions to the requirement, and asked only that its employees comply with the policy related to such exceptions. Its decisions were lawful and consistent with federal guidance, and it is respectfully submitted that those decisions, particularly in the context of a hospital employing a front line nurse, should not be disturbed.

### D.  Sibley's Title VII Claims Cannot Be Asserted Against an Individual Defendant Like Dr. Heaton

This Court and the Fifth Circuit have consistently recognized that Title VII cannot apply to individual officers or supervisors. *Patz v. Sureway Supermarket*, No. CV 17-3465, 2018 WL

15

6788088, at *4 (E.D. La. Dec. 26, 2018) ("The Fifth Circuit has held that, although Title VII's definition of 'employer' includes 'any agent' of an employer, employees of a corporation are not individually liable under Title VII."); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir. 1999) ("While Title VII defines the term employer to include 'any agent' of an employer, *id.* § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim."); *Smith v. Amedisys Inc.,* 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."). Therefore, to the extent that Sibley's Title VII allegations seek to extend liability to Dr. Heaton (or Greg Feirn[11]), such claims must be dismissed with prejudice.

## V.    Sibley's *Negligence* Claims Are Barred by Louisiana's *Worker's Compensation* Law and Prescription

Sibley asserts a conclusory negligent infliction of emotional distress claim. R. Doc. 1, ¶¶ 85-90. This Court has repeatedly held that negligent infliction of emotional distress is barred by Louisiana's Worker's Compensation Law (La. R.S. § 23:1032). *Barton v. Checkers Drive-In Restaurants, Inc.,* No. CIV.A. 11-186, 2011 WL 1193061, at *4 (E.D. La. Mar. 28, 2011) ("There appears to be no dispute that claims for *negligent* infliction of emotional harm are barred under Louisiana Worker's Compensation law."); *Booth v. Intertrans Corp.,* No. CIV. A. 94-2359, 1995 WL 324631, at *18 (E.D. La. May 26, 1995) ("Since Louisiana's Workmen's Compensation Statute provides the exclusive remedy for injuries sustained by the plaintiff as a result of the defendant's negligence, plaintiff's negligent infliction of emotional distress claim must be dismissed."). Because Sibley's conclusory allegations of negligent infliction of emotional distress are either

---

[11] Greg Feirn has not been served as of the date of this Motion.

4692801.v1

against her employer or supervisors acting within the course and scope of their employment (*see* R. Doc. 1, ¶¶ 86-87), this claim must be dismissed with prejudice as a matter of law.

Additionally, Sibley's negligent infliction of emotional distress is barred due to the one-year prescriptive period. *Morgan v. LCMC Health*, No. CV 21-172, 2022 WL 715444, at *5 (E.D. La. Mar. 10, 2022) ("Claims for intentional or negligent infliction of emotional distress are governed by the one-year prescriptive period for delictual actions set forth in Louisiana Civil Code article 3492.") From the face of Sibley's Complaint, she was suspended on November 15, 2021 and reinstated on November 23, 2021. R. Doc. 1, ¶¶ 23-24, 31. However, Sibley did not file her Complaint until December 1, 2022, *over a year* after the alleged emotional distress injury was sustained. Therefore, as a matter of law, her negligent infliction of emotional distress claim should be dismiss with prejudice.

**VI.   Sibley's Complaint Lacks a Single Allegation of "Direct-Duty" and "Serious" Mental Anguish Sufficient To Establish a *Negligent Infliction of Emotional Distress* Claim**

Even if Louisiana's Worker's Compensation Law and prescription are disregarded, as this Court has recently held: "Louisiana law does not generally recognize an independent cause of action for negligent infliction of emotional distress" [12] and the cause of action "is available in limited circumstances only." *Danks v. Grayson,* No. CV 21-1806, 2022 WL 4119761, at *13 (E.D. La. Sept. 9, 2022); *see also Martin v. Am. Midstream Partners, LP,* 386 F. Supp. 3d 733, 743 (E.D. La. 2019) ("Courts have interpreted these restrictions to limit NIED claims to cases where the defendant's conduct was extreme and outrageous absent other special circumstances.").

---

[12] Negligent infliction of emotional distress is a State law claim, and as such, Louisiana substantive law applies. *See Id.*

To state a claim for negligent infliction of emotional distress, Sibley must allege: (1) that an independent, direct duty was owed to plaintiff by defendant; (2) that the duty afforded protection to plaintiff for the risk and harm caused; (3) that the duty was breached; and (4) that the mental anguish suffered by the plaintiff was genuine and serious. *Id.* For the mental anguish to be genuine and serious, this Court has held that: "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." This Court has given examples of such serious mental anguish, including "neuroses, psychoses, chronic depression, phobia, and shock." *Id.* Sibley has failed to make a single allegation that her circumstances fall into the limited circumstances where negligent infliction of emotional distress applies, and certainly makes no allegations of neuroses, phobia, chronic depression, psychoses, or shock required to establish a negligent infliction of emotional distress claim. Instead, she only makes conclusory statements of emotional distress and psychological fear of losing her job (even though she has remained employed for more than a year after reinstatement), certainly insufficient for the serious mental anguish required by this Court. R. Doc. 1, ¶ 88. Additionally, the actions which she asserts caused her emotional distress, emails from her supervisors asking that she comply with hospital policy, are insufficient to establish the requisite extreme and outrageous conduct for such a claim. For these reasons as well, this claim should be dismissed with prejudice.

### VII.   Article 2320 is Inapplicable Because It Only Addresses Vicarious Liability Standards Extending to Torts and Sibley's Claim Has Prescribed

Sibley asserts that Dr. Heaton and Greg Feirn violated Louisiana Civil Code Article 2320, which provides that "masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." This Court has repeatedly held that Article 2320 does not provide a separate cause of action, but only establishes *vicarious liability for tort actions* alleged against employees:

18

> Because, as noted above, plaintiff has not alleged a plausible tort claim, he does not
> have a claim for conspiracy to commit such a tort. Plaintiff similarly does not have
> a claim for vicarious liability, given that *he has not plausibly stated* that any of the
> non-diverse defendants' employees *committed a tort* while acting within the scope
> and course of their employment. La. Civ. Code art. 2320.

*Shargian v. Shargian*, 591 F. Supp. 3d 100, 112 (E.D. La. 2022); *Meek v. Roddy*, No. CV 20-2880, 2021 WL 4552554, at *2 (E.D. La. Oct. 5, 2021) ("Pursuant to Louisiana Civil Code Article 2320, an employer is liable for *the tortious acts* of its employees 'in the exercise of the functions in which they are employed.'"). Noticeably absent from Sibley's Complaint are any viable claims arising in tort for which any entity, let alone Dr. Heaton individually, could be vicariously liable. And, there is no "vicarious liability" which could apply to an individual actor such as Dr. Heaton. Therefore, Sibley's Article 2320 claim should be dismissed with prejudice.

Additionally, because an allegation under Article 2320 is not a separate cause of action, but depends on an underlying tortious act, it is subject to the same one-year prescription period for any tort action provided under Louisiana Code Article 3492. *See Guillory v. Hosp. Housekeeping Sys., LLC*, No. 2:20-CV-00859, 2021 WL 2559586, at *3 (W.D. La. May 7, 2021), *report and recommendation adopted*, No. 2:20-CV-00859, 2021 WL 2555425 (W.D. La. June 22, 2021) (applying the one-year prescriptive period to a vicarious liability claim under Article 2320 because the underlying tortious conduct had also prescribed); *Robinson v. Lipps*, 2019 WL 3574708, at *4 (W.D. La. July 17, 2019), *report and recommendation adopted*, 2019 WL 3588186 (W.D. La. Aug. 5, 2019) ("Plaintiffs' claims against Robideaux and Aguillard for vicarious liability of same [under Article 2320], are claims sounding in tort, which are subject to Louisiana's one-year prescriptive period applicable to delictual actions."). Therefore, because Sibley was suspended on November 15, 2021 and reinstated on November 23, 2021 but did not file her

4692801.v1

Complaint until December 1, 2022 *over a year later*, her claims under Article 2320 are time-barred as a matter of law.

### VIII. Sibley's "Common Law Conspiracy" Claim Fails Because There is No Underlying Actionable Tort Claim Upon Which it May be Founded and it Improperly Attempts to Establish Individual Liability for Title VII Misconduct

Sibley's "Common Law Conspiracy" claim (R. Doc. 1, ¶¶ 76-84) fails as a matter of law because such a claim must be brought pursuant to an actionable underlying tort. Common law conspiracy, more commonly referred to as "civil conspiracy," is a state law claim, and so Louisiana law applies. *See Shargian v. Shargian,* 591 F. Supp. 3d 100, 111 (E.D. La. 2022); *see also Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 695 (N.D. Tex. 2008) (applying Texas "civil conspiracy" law to "common law conspiracy" claim). Much like Article 2320, a conspiracy under Louisiana law can only be brought for an underlying tort. *Shargian,* 591 F. Supp. 3d at 111; *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So. 2d 546, 552 ("The actionable element in a claim under this Article [2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate."). As this Court has held, "the actionable element of a conspiracy claim is the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *McIntyre v. Theodore*, No. CIV.A. 15-0544, 2015 WL 2250213, at *2 (E.D. La. May 13, 2015).

Just as with Article 2320's vicarious liability, Sibley's conspiracy claim lacks any actionable tort for which the Defendants could have conspired. Sibley's negligent infliction of emotional distress claim should be dismissed with prejudice under Louisiana's Worker's Compensation Law, prescription, and for Sibley's failure to allege the elements of a negligent infliction of emotional distress claim. Further, Sibley attempts to use her "common law conspiracy" claim to expand her Title VII discrimination allegations to Dr. Heaton and Greg Feirn,

4692801.v1

even though Title VII cannot be asserted against individuals. R. Doc. 1, ¶ 77. This claim should be dismissed with prejudice.

Moreover, the one-year prescriptive period that bars Sibley's Article 2320 claim also bars her "common law conspiracy" claim. *See McIntyre*, 2015 WL 2250213, at *2 (recognizing that the "claim for conspiracy is likewise subject to a one-year prescriptive period and must be dismissed.") The last act alleged in her Complaint is her suspension on November 15, 2021 and her reinstatement on November 23, 2021, over a year before she filed her Complaint on December 1, 2021. Her "common law conspiracy" should be dismissed with prejudice as prescribed.

## IX.   Concluding remarks

To be sure, the vaccination policy adopted by LCMC Health was implemented following considerable study and input by numerous healthcare experts in a variety of relevant fields, many of whom were leaders in the state's efforts to control the spread of COVID-19. Defendants value their team members and respect their rights. However, service in the healthcare industry involves unavoidable risks and special obligations. In adopting COVID-19 vaccination requirements, Defendants have not only followed established law but have taken appropriate measures to meet those obligations and mitigate the risks associated with the pandemic.

Sibley's own Complaint demonstrates that her rights under Title VII were afforded to her by Defendants, as she received a religious accommodation once and immediately after she provided the necessary information to Defendants, instead of the legal maxims she initially provided. In the interim, and only because of Sibley's admitted failure to timely provide any religious information, Sibley was suspended without pay for a total of nine (9) days. However, as soon as she complied, she was reinstated and continues to work as a nurse for Children's Hospital. Therefore, Sibley was afforded a reasonable accommodation for her religious beliefs, and was not

4692801.v1

retaliated against due to her efforts to obtain a religious accommodation. Her tenuous other claims

fail swiftly. She does not assert a race discrimination claim, making 42 U.S.C. § 1981 inapplicable.

Her constitutional claims fail because Defendants are all private actors. Her negligent infliction of

emotional distress is barred by Louisiana's Workers Compensation Law and has prescribed. Her

Article 2320 "vicarious liability" and "common law conspiracy" claim both fail because they

require an underlying tort, absent from Sibley's Complaint, and fall due to the same one-year

prescription period. For the above reasons, Sibley's Complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Peter J. Butler, Jr.*
PETER J. BUTLER, JR. (La Bar Roll No. 18522)
RICHARD G. PASSLER (La Bar Roll No. 21006)
PHILIP J. GIORLANDO (La Bar Roll No. 38234)
**BREAZEALE, SACHSE & WILSON, LLP**
First Bank & Trust Tower, Suite 1500
909 Poydras Street
New Orleans, Louisiana 70112-4004
Main Phone: (504) 584-5454 / (504) 619-1800
Fax Number: (504) 584-5452
Email:      peter.butler.jr@bswllp.com
            richard.passler@bswllp.com
            philip.giorlando@bswllp.com

MELISSA M. SHIRLEY  (La. Bar Roll No. 25248)
**BREAZEALE, SACHSE & WILSON, LLP**
301 Main Street, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone:  225-387-4000
Fax:  225-381-8029
Email:      melissa.shirley@bswllp.com

***Counsel for Dr. John Heaton and LCMC Health***

22

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY**, that a copy of the above and foregoing pleading has been filed via the Court's CM/ECF Electronic Filing system and forwarded to Brandi Sibley, *pro sé* Plaintiff, via U.S. Mail on this 15th day of February, 2023.


                        */s/ Peter J. Butler Jr.*

4692801.v1